**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| JENNIFER CAVAZOS,<br>   *Plaintiff*<br><br>-vs-<br><br>JOSE MORALES LEIVA, YANILDRE<br>PEREZ GUERRA,  YJ<br>TRANSPORTATION, LLC,<br>   *Defendants* | §<br>§<br>§  SA-23-CV-01176-XR<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORDER ON PLAINTIFF'S *DAUBERT* MOTION

On this date, the Court considered Plaintiff's motion to exclude the testimony of David Lund (ECF No. 45), Defendants' response (ECF No. 46), and Plaintiff's reply (ECF No. 47). After careful consideration, the Court issues the following order.

## BACKGROUND

This case arises out of a motor vehicle accident at the intersection of E. Martin Street and Navarro St. in San Antonio on June 16, 2022.

Plaintiff Jennifer Cavazos was traveling west bound in the 300 block of E. Martin Street. Defendant Jose Leiva was traveling north on Navarro Street, operating a 2015 RAM 3500 truck owned by Defendant Yanildre Guerra, and pulling a commercial trailer, owned by Defendant YJ Transportation, LLC. As Ms. Cavazos proceeded through the intersection, Mr. Leiva made lane change and collided with Ms. Cavazos's vehicle. Both Ms. Cavazos and Mr. Leiva claim to have had the green light.

Defendants designated David Lund, an accident reconstructionist, as an expert on "the mechanism and cause of the accident." ECF No. 35 at 2. Plaintiff deposed Mr. Lund on December 11, 2024. *See* ECF No. 46-2, Lund Dep.

Mr. Lund produced an expert report on February 25, 2025, expressing the following opinions:

1. The front left of the Chevrolet and the front right of the Ram collided within the intersection.

2. There is insufficient evidence available to determine which, if either, driver had a red or a green traffic signal.

3. The Ram's change in speed (delta-V) was approximately 5 mph.

    a. The Chevrolet change in speed was approximately 11 mph. The Chevrolet's impact speed was approximately the change in speed (delta-V) given the testimony that the vehicles stuck together.

4. The Ram's download data indicated that it was traveling generally straight and veered right immediately prior to impact; however, it is possible that the Ram had drifted left slightly and corrected back to the right.

5. The Chevrolet had the capability to retain data from a collision and would have been expected to have recorded data from this collision due to the forces involved, even though the airbags did not deploy.

*See* ECF No. 46-1.[1]

Plaintiff seeks to strike Mr. Lund's testimony, challenging both his expert qualifications and the reliability of his opinions. *See* ECF No. 45. Defendants correctly point out that Plaintiff's motion relies on Texas state evidentiary standards and caselaw rather than Rule 702 of the Federal Rules of Evidence. *See* ECF No. 46 at 2. The Court evaluates the motion under the federal standard.

---

[1] The Court granted Defendants leave to late-serve Mr. Lund's expert report, observing that the extension would not affect the trial date and was unlikely to prejudice Plaintiff. *See* Text Order (Feb. 7, 2025). The Court further noted that, to the extent that Mr. Lund's report includes new opinions that were not addressed at his deposition, Plaintiff could cure any such prejudice by (1) seeking leave to re-depose Mr. Lund or (2) moving to strike any novel opinions in the report. Plaintiff does not seek to strike any of Mr. Lund's testimony on this basis.

**DISCUSSION**

**I.    Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

    a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b) the testimony is based on sufficient facts or data;

    c) the testimony is the product of reliable principles and methods; and

    d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing reliability: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards

and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593–94; *see also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." FED. R. EVID. 401.

A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with proper deference to the [factfinder]'s role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

4

**II.    Analysis**

Plaintiff asserts that Mr. Lund is unqualified to proffer his opinions in this matter because he is not an engineer, has not published peer-reviewed articles in accident reconstruction, and has testified as an expert witness before a jury on only two occasions. *See* ECF No. 45 at 4. None of these elements are required to establish expertise in accident reconstruction, however. *See Koenig v. Beekmans*, No. 515CV00822RCLRBF, 2017 WL 6033404, at *3 (W.D. Tex. Dec. 5, 2017) ("Koenig's arguments attacking Cox's lack of an undergraduate or advanced degree in either engineering or physics are unavailing. Neither a college degree nor an advanced degree is a requirement for an expert witness.").

The Court is satisfied that Mr. Lund is qualified as an expert on accident reconstruction, under the Fifth Circuit's "most extensive exegesis" on the topic, *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999). *Mendoza v. PGT Trucking, Inc.*, No. 1:18-cv-432-LY-ML, 2020 WL 2976012, at *3 (W.D. Tex. Feb. 28, 2020) (internal quotation marks omitted). *Wilson* directs district courts to the following factors in scrutinizing accident reconstruction experts:

> (1) whether the proposed expert has held a professional rank; (2) whether the proposed expert has taught accident reconstruction courses; (3) whether the proposed expert holds degrees or certificates in accident reconstruction; (4) whether the proposed expert has completed requirements for certification by the Association of Accident Reconstructionists; (5) whether the proposed expert has been excluded by other courts; (6) whether the proposed expert conducted accident reconstruction studies or experiments; (7) whether the proposed expert took measurements, collected data from the accident scene, examined the tires, or examined parts of the vehicles; (8) whether the proposed expert based their calculations solely on publicly available data; and (9) whether the proposed expert maintains relevant expertise.

*See id.*; Essentially, the first five factors pertain to accident reconstructionist qualifications, and the latter four factors contemplate the expert's reconstruction methodologies.

As set out in his attached curriculum vitae, Mr. Lund is an accredited traffic accident reconstructionist by the Accreditation Commission for Traffic Accident Reconstructions, and has education, training, and experience in vehicle accident reconstruction. *See* ECF No. 45-2 at 18–21. Before going into private practice as an accident reconstructionist, Mr. Lund was a licensed Texas Peace Officer and was his department's lead criminal traffic investigator for accidents resulting in serious injuries or death. *Id.* at 19–20. He has performed accident reconstruction and analyses on hundreds of cases involving commercial tractor-trailers, passenger vehicles, motorcycles, pedestrians, and bicycles. *Id.* at 18. He has also given several presentations on accident reconstruction and taught courses in collision investigation and reconstruction to engineers, law enforcement, and private investigators. *Id.* at 19.[2]

The Court is also satisfied that Mr. Lund's opinions are sufficiently reliable under the *Daubert* framework. Plaintiff does not appear to challenge Mr. Lund's methodology but the sufficiency of the data supporting his conclusions. *See* ECF No. 45 at 5. For example, Plaintiff argues Mr. Lund did not have data to support a conclusion regarding the position or trajectory of the vehicles or the speed of the vehicles based on his admission that there is insufficient empirical evidence to determine which vehicle had the green light at the time of the collision. *See* ECF No. 45 at 5. But Plaintiff fails to explain how the position, trajectory, and speed of the vehicles would depend on any traffic light evidence (or lack thereof).

In reaching his opinions, Mr. Lund relied on police reports, deposition testimony, event data recorder ("EDR") information downloaded from Ram truck, vehicle specifications and

---

[2] Without explanation, Plaintiff insists that Mr. Lund is "clearly unqualified" to testify relating to the speed of the vehicles or the forces involved in the collision. ECF No. 45 at 8. But, "it is a routine part of the work of an accident reconstruction expert to calculate speeds of vehicles and forces upon impact and to use physics in the calculations and analysis of same." *Byrd v. Allstate Prop. & Cas. Ins. Co.*, No. CV 16-563-JWD-EWD, 2018 WL 4693812, at *4 (M.D. La. Oct. 1, 2018).

6

manuals, auction photographs of the Chevrolet, Plaintiff's expert report, and federal motor vehicle safety standards, all of which are conventionally used in the field. *See* ECF No. 45-2 at 10–11; *Sandlin v. Urbina*, No. 19-00556-BAJ-RLB, 2022 WL 636677, at *3 (W.D. Tex. Mar. 4, 2022) (concluding that, in tandem with his experience as an accident reconstruction, expert's review of crash photographs, Google satellite imagery, deposition testimony, and the collision scene "was 'reliable enough for the purpose of admissibility'") (quoting *Young v. Am. Eagle Lines*, No. CV 05-1079-JVP-SCR, 2007 WL 9710791, at *2 (M.D. La. Feb. 14, 2007)).

While Plaintiff's suggest that Mr. Lund improperly "defer[red] to Mr. Leiva's testimony" that he was "going straight the entire time," contradicting EDR data from the Ram showing a 56-degree steering input mere milliseconds before impact. *See* ECF No. 6–7. Mr. Lund's recitation of Mr. Leiva's statements does not constitute a credibility determination. *Cf. Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 167 (S.D. Tex Dec. 19, 2018) (striking an expert's opinion "that there [were] been no credible reports"). Indeed, Mr. Lund did not endorse Mr. Leiva's statements, in his expert report or deposition testimony. Rather, Mr. Lund explained that, because it was impossible to determine the precise location of the impact in the intersection, it was also impossible to "plot backward" from the impact to identify the Ram's starting position (and angle) as it approached the intersection. ECF No. 45-1, Lund Dep. at 22:10–20. Thus, Mr. Lund testified that it was *possible* that, while Mr. Leiva "believed he was going straight," the truck had in fact veered to the left, and thus that the 56-degree turn to the right was *consistent with* normal lane-keeping. *Id.* at 25:18–21; see also ECF No. 45-2 at 4, ¶ 4 ("[I]t is *possible* that the Ram had drifted left slightly and corrected back to the right.") (emphasis added).

Experts are permitted to rely on assumptions when reaching their opinions. *See Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 153–54. So long as the assumptions have some basis in

7

the record and an underlying rationale *see Moore*, 547 F. App'x at 516, and represent the kind of facts typically relied on by experts in accident reconstruction, Mr. Lund is free to base his opinions on them. *See* FED. R. EVID. 703; *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999). To the extent that Mr. Lund's analysis relies on disputed facts, Plaintiff will have a chance to challenge them through "[v]igorous cross-examination" and the "presentation of contrary evidence" at trial. *Daubert*, 509 U.S. at 596. Such attacks on the "bases" of an expert opinion "affect the weight to be assigned to that opinion rather than its admissibility" and should also "be left for the [factfinder]'s consideration." *Viterbo*, 826 F.2d at 422.

Far from casting doubt on the reliability of his opinions, Mr. Lund's transparency about his assumptions and gaps in the available data suggest that he has refrained from offering speculative conclusions about the collision. As Defendants point out, "[i]f [Mr. Lund] were manufacturing an opinion for the benefit of the defense without regard for the standards applied by experts, one would expect an opinion that the defendants had the green light, rather than an admission that there is not enough data to reach that conclusion." ECF No. 46 at 4 n.1.

## CONCLUSION

After careful consideration, Plaintiff's motion to exclude the testimony of David Lund (ECF No. 45) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 10th day of June, 2025.

                                             _____
                                             XAVIER RODRIGUEZ
                                             UNITED STATES DISTRICT JUDGE